In the United States District Court Middle
Division of Florida, Ocala Florida

Dorsey W. Sutton
    Plaintiff

V.

CHARLES R. Holloman, P.A.
    Defendant

CASE No: 5:23-CV-63WWB-PRL
To BE ASSIGNED BY
clerks office

2023 JAN 25 PM 1:36    FILED

LEGAL MAIL PROVIDED TO
COLUMBIA CORRECTIONAL INSTITUTION
ON __1/23/23__ (DATE) FOR MAILING
STAFF INITIAL _DS_ I/M INITIAL

COMPLAINT with JURY DEMAND

## Introduction

1. THIS is A CIVIL RIGHTS ACTION FILED BY Dorsey W. SUTTON, PRO SE for DAMAGES AND INJUNCTIVE RELIEF UPON THIS AFFIDAVIT of FRAUD IN Violation of DUE PROCESS AND the 4th, 5th, 6th AND 14th AMENDMENTS To the UNITED STATES Constitution under S. 95.11(3); S. 95.031(2)(a); Fed. R. Civ. P. 60(d)(3); 60(b)(6); 60(b)(3); 60(d); S. 48.193(1)(a); S. 48.194(1); COMPLAINT: COMMENCEMENT of AN Action Fla. R. Civ. P. Rule 1.050; Rule 1.080(a); Rule 1.070 Process; Rule 1.130; 1.140

(a). PlaintiFF Dorsey Sutton RESPECTfully MOVES THIS Court for AN ORDER GRANTING the "ABOVE" Titled Motion "AND THE" ENCLOSED Motion "MEMORANDUM of LAW IN SUPPORT of COMPLAINT with JURY DEMAND, Claims ONE through four," To Be DIRECTED To THE DEFENDANT MR. CHARLES R. Holloman, P.A. who MOVED To 3523 EAST 96TH WAY, THORNTON Colorado, 80229-2874, charlesholloman@gmail.com

(b). WHERE AS THIS CIVIL RIGHTS Action is ARISING FROM THE DEFENDANT OPERATING HIS LAW OFFICE, MR. CHARLES R.

Holloman P.A. Attorney and Counselor at Law, Certified Florida Bar # 403113, OFFICE at 7. East Silver Springs Blvd. Suite 200 Ocala Florida 34470, Website: WWW. HollomanLaw.org as the PLACE where the Events—claims To Follow FORM THE BASIs of THE COMPLAINT INITIATION of the Actions That Followed Before The DefendANT MOVED To THORNTON Colorado, AND To ENsure that the DefendANT Has TIMELY RECEIVED a Copy of THIS ComPlAINT with the ENCLOSED Motion for MemoRAHdum of LAW iN SUPPort of ComplAINT with JURY Demand iN His Both PersonAL and OFFicial Duty.

## JurisDiction

(C). THIS Court HAS Jurisdiction Foe the PLAINTIFFS claims iN Violation of The Federal AND ConsTituTionAL 4th, 5th, 6th AND 14th Amendments VIOLATED by the Actions—claims made ARisiNg from The DefendANT cARRying oN a BUSINESS VENTURE—LAW OFFICE iN MARioN County, Ocala Florida where the DefendANT Failed To Perform His CoNTRact that ANY REASONable DEFENSE ATTORNEY's PROMISES To be HIRED to do IN which claims to Follow show DefendANT Failed iN DiRect violation of PlAINTiFFs Civil AND ConstiTutional RiGHTs As Will Be PRESENTED iN this ComplAINT with JURY Demand

## THE PARTIES to THIS COMPLAINT

2. A. THE PlAINTiFF; Dorsey W. SuttoN #L01135 PRo SE,
    Columbia C.I. ANNEK, 216 S.E. Corrections Way,
    Lake City, Florida, 32025-2013

    B, THE DefendANT; CHARLES R. HollomAN, P.A.
        3523 EAST 96th Way,
        THORNTON. Colorado, 80229-2874
        Website: CHARLESholloman @ gmail.com

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. THE Plaintiff Has Exhausted All His Administrative Remedies with Respect To All Claim's Against Defendant,

2. THE Fifth Judicial Circuit - Marion County Florida, Case No: 2012-CF-3751-A; SAME Trial AND Sentencing Judge - Now THE Chief Judge of the Fifth District Court of Appeal of My Case is the Honorable BRIAN D. LAMBERT.

3. SEE Attached Exhibits Confirming:
(a). L.T. Case No: 2012-CF-3751-A Denying Plaintiff's Motion on 11-17-2021; Then Sent to Appeal Court

(b). New Case No: 5DCA #22-0001 on 1-3-2022

(c). "Notice of Delay" Authorized by: BRIAN D. LAMBERT, CHIEF JUDGE on MAY 16th 2022

(d) Appeal Courts "PER CURIAM AFFIRMED" - CASE No: 5D22-0001; L.T. Case No: 2012-CF-3751 on 6-21-22

(e). Mandate 5DCA Case No: 5D22-0001; Witness the HONORABLE BRIAN D. LAMBERT CHIEF Judge of the District Court of Appeal, on this Day, July 14th 2022,

(f). Every Motion Sent to the 5DCA was Ruled; PER CURIAM AFFIRMED with NO STATUTE WHY

(G). Attorneys Reply

3

<u>FACTS</u>

3a. Defendant intentionally - knowingly committed Fraudulent Acts Against His client the Plaintiff outside THE Scope of A Defense Attorney To Defend the Plaintiff AND Present All available Evidence in Favor of MR Sutton To the Prosecutor AND Court as the Plaintiff's Legal Representation THAT HE WAS Hired To do AND Failed as the Records will show.

4. Defendant Presented undocumented Hypothetical Theroy's Against The Plaintiff AND Fabricated Evidence - Fraud on the Court During Trial AND Final Closing Argument to the Jury in violation of Plaintiffs Civil AND 4th 5th 6th AND 14th Amendments To THE U.S. Constitution AND A Miscarriage of Justice did Result.

5. On 11-20-2012 Plaintiff was Arrested for Fleeing or Attempting To Elude Law Enforcement officer and Driving while License was Revolked: Bonded out - But Bond was Revolked on SepTember 16th 2013 where Plaintiff was Placed in The Marion County Jail Medical Pod.

6. Plaintiff was Refused All of His Prescribed Medications AND Schualed CHEMO-THERAPHY for Bone Cancer in the Middle of Treatments, Resulting in ? Body Withdrawal's AND Moved into Jails Intensive Care unit for Aprox, 3 weeks AND Returned To Medical Pod in a Wheelchair Allowing Physical AND Mental Depression To Worsen in Jail untill after 2-4-14 Trial. That The Defendant was made well aware of in Hiring Jail interview.

7. THE initial Jail House interview in Mid October with The Defendant is the Initiation of This Civil Case Against Defendant where the First Time Meets And Hires the Defendant.

8. THE Initial interview - Being the only Time Defendant saw and Talked to the Plaintiff while HE was in Jail from September 16th 2013 through February 20th 2014, check Jail Records for Confirmation of "ONLY ONE visit" AND "NO PHONE Calls Accepted" to Defendants OFFiCE PHONE NUMBER 352-867-0766 from the Plaintiff.

9. PROMiSES MADE by Defendant To The Plaintiff To Be HIRED which HE Failed to do include But ARE Not Limited To:

A. Defendant ASSURED Plaintiff that HE KNEW the Judge AND Prosecutor Very Well AND they would work with Him.

B. Defendant would PRESENT the "FALSiFiED" ARREST AFFidavit As the ARREST Probable Cause of this CASE by Deputy Bustamante I.D.#5683 with NO PRiMi FACiE Legal Reason To TARget Plaintiff's Vehical Leaving Motel with NO STOP SiGN.

C. Defendant PROMiSED To Get PHoto's of Motel AND 29th sTReet showing Very short distance Almost straight Across 55th Ave. from the Motel PARKiNG LANES OR Spots Holding only ONE CAR Each makiNg it ImPossible to HAPPEN AS WRiTTeN AND would Be CleAR AND CoNViNCiNG Proof the Probable CAuSE REQuiRed by LAW was Falsified AS WRiTTen.

D. THERE would BE NO TRiAl; ONCE Defendant Produced The PHoto's to the Prosecutor With A Motion for "SUPPRESSiON of Evidence" from Plaintiff TuRNiNG onto 29th sTReet with The Illegal CHASE - NON ExsistANT Probable CAuSE That Followed.

E. Defendant WAS INformed by Plaintiff that Prior ATToRNey, AND Jail Inmates Had Told Him ARRESTiNG OFFicer - BusTAmaNte Had A Representation of Falsified Reports; Made Illegal Traffic sTops; AND Lied IN CouRT To GAiN His CoNVictioNs,

4

F. Defendant Assured Plaintiff once Photo's were Presented challenging Arresting Deputys credibility on The Arrest Affidavit as an Illegal Traffic Stop, THE State would not want any Public Attention on this Deputy's Actions in this Case and would Offer an Acceptable Plea Deal - Probably Probation Before He filed a Motion for Acquital, "Suppression of Evidence". THE Two in Car Video's by Deputy's As "Tainted Evidence" with No Legal Reason To Peasue Leaving Motel and Turning onto 29th Street as written by Deputy.

G. Along with Plaintiffs AGE - MEDICAL - CANCER AND A NON PRISON SCORE sheet of only 28.8 Total Points.

H. Defendant AGREED To Keep Plaintiff informed of All Progress and Not Conceal any Available Facts.

i. Defendant AGREED to challenge the Driver License Revocation Because Florida D.M.V. were using a 1976 D.U.I from the State of VIRGINIA That VIRGINIA D.M.V. shows No Record of and once CHallenged Properly Florida D.M.V. would Have to Remove the Revocation AGAinst The Plaintiff.

J. Defendants MAIN PURPOSE To Be HIRED With NO Trial WAS To CHallenge the ARRESTing Deputy's CREDIBILITY IN The ARREST AFFidavit and file a Motion PRESENting the Traffic STOP of the Plaintiff To Be Tainted Evidence That CANNOt Be used in ANY CRIMINAL PROCeeding AGAinst the Plaintiff

K. With NO Legal ProbAble Cause for Deputy To PERSUE - CHASE AFTer Plaintiff Leaving Motel PARKING LANE and Turning onto 29th Street THERE WOULD BE NO CASE AGAinst THE Plaintiff; BECAUSE THE Fleeing CHARGE would Not Have HAppen if Not Provoked by the Deputy.

5

L. Defendant was paid in full by Mid November 2013 by Plaintiffs Friend Mr. Cody Thames who went to Defendant's Office Several Trips and will confirm the Promises supra made Also To Him and Plaintiffs including Plaintiffs Mental Depression - Denial of Medications in Jail and will Be Called As A Witness on Plaintiffs Behalf.

10. Defendant's Repeated Promise of "Trust Me," "I know what I'm doing" were All Lies that the Face of the Record will Clearly show Convincing Proof Defendant Had NO Intention of keeping His Specific Promises that is the Obligated Duty of Any Defense Attorney once Paid and Hired Constituting FRAUD Against the Plaintiff Before and During a Trial the Defendant wanted, not Plaintiffs Harming The Plaintiff - Resulting in the unReasonable Maximum Prison Sentence of 15 years for Fleeing & Eluding and 5 years for The Permanent Driver License Revocation that would Not Have Happened without Defendant Assisting State Against the Plaintiff As Records to Follow will clearly show; Defendants Implied False Promises To be Hired constitutes "Promissory Fraud"

11. NO Communication Between Defendant and Plaintiff in Jail once Hired to Keep Plaintiff Updated on Progress: Instead Defendant on 1-30-14 concealed the Fact that Him and the Prosecutor Mr. Robinson Had Agreed To Have a Trial and 20 Page Jury Instructions that the Defendant NEVER SHOWED or Discussed with the Plaintiff, in Violation of the Implied Promises made to Be Hired,

12. Defendant's First Appearance in Court on FRIDAY, 1-31-2014 walks up to the Podium and Tell's the Judge "WE ANNOUNCE READY FOR TRIAL" without the

Plaintiff's APPROVAL OR INFORMING Him of His change of PLANS By only Telling the Plaintiff; "TRUST ME", "I'll EXPLAIN To you lATTER" what I'm doing. So Plaintiff is Silent. Still NOT understanding what the Defendant Actually PLANS.

13. THEN the Defendant CALLS FOR A BENCH Counsel with Him - The PROSECUTOR AND the JUDGE - still CONCEALING FROM THE PLAINTIFF what They DISCUSSED; ONLY To BE Told By THE Judge; "No Comment" THEN Tells the PLAINTIFF SEE you Monday. Plaintiff is then TRANSPORTED BACK to JAIL Expecting the Defendant To COME SEE Him AND Explain - But Defendant Did Not SHOW UP - Call or Communicate iN ANY WAY with PLAINTIFF.

14. THE Following SATURDAY AND SUNDAY (February 1 & 2) the Defendant COMPOSED AND PREPAIRED The "STIPULATION FOR PERMANENT REVOCATION of DRIVER'S LICENSE" AGAINST His own Client the PLAINTIFF iN Violation of the Plaintiff's 5th 6th AND 14th Amendments to the UNITED STATES Constitution That NO PERSON is SUPPOSE To "Be Compelled iN ANY CRIMINAL CASE to Be A WITNESS AGAINST Himself," OR iN DUE PROCESS of LAW OR Florida BAR Rules That NO REASONABLE Defense Attorney would HAVE DONE AGAINST His Client is FRAUD.

15. THE Following MONDAY MORNING, FEBRUARY 3rd 2014, Just Before the Judge Enters the CourtRoom the Defendant HANDS THE DRIVER LICENSE Revocation HE Had PRE PAIRED To the PLAINTIFF who Did Not WANT To SIGN it - Being uNLEARNED iN LAW UNTILL the Defendant CONVINCED the Plaintiff to "TRUST ME"; "ME AND MR. ROBINSON HAVE Already Got EveryThing WORKED OUT FOR your BEST INTEREST," "Just SIGN this" AND "if the Judge Ask you Tell Him you KNEW your license WAS Revolked," so the PLAINTIFF SIGNED it AS INSTRUCTED TRUSTING the Defendant, Not KNOWING

Beforehand THAT ONCE THE STIPULATION WAS PRESENTED TO THE COURT UNTILL the Judge

16. FOR the RECORD, INFORMED the PLAIntiff, His FIRST TIME HEARING - CONCEALED by the Defendant FROM THE PLAINtiff - NEVER DISCUSSED OR AGREED to that the Defendant AND PROSECUTOR HAd AGREED to Pick a JURY that SAME MORNING AND HAVE the TRIAL THE Following TUESday MORNING 2-4-2014 UNTILL the JUDGE TOLD the PLAIntiff AFTER the DRIVER LICENSE Revocation WAS PRESENTed to Him.

17. With the Defendant AGAIN TAKING Advantage of the PLAINtiffs WEAKEN MENTAL STATE ACCOUNT DENIED CHEMOTHERAPHY FOR BONE CANCER IN JAIL AND CONVINCING Him TO "TRUST Him" AND JUST SIT THERE while HE TOTALLY ABANDONED PRESENTING ANY AVAILABLE Defense TO THE PROSPECTIVE JUROR's, ADVANCING the STATE:

   A. "THOU shall NOT DRIVE WITHOUT a DRIVERS LICENSE."
   B. "BECAUSE YOU don't MESS with the LAW."
   C. "YOU KNOW where I'M GETTING AT, VOIR DIER"
   D. "HOW MANY People it Has KILLED IN THE LAST YEAR? It is INSANE"
   E. "PEOPLE Killed" "Having FRIENDS IN LAW ENFORCEMENT is WHAT VOIR DIRE is"
   F. "NO MATTER what verdict you do, WHAT -- WHAT ARE THEY ENTITLED TO, THE STATE? JUSTICE"
   G. "AIRIGHTY, GOOD, YOU'RE ONE of US NOW, LAND of THE SHORT VOIR DIRE."

17(a) Defendants TESTIMONY SUPRA TO THE PROSPECTIVE JUROR's THAT NO Competent Defense ATTORNEY would do AGAINST His OWN Client is MISRepresentation - FRAUD that will BE PRESENTED IN THE ENCLOSED "MEMORANDUM of LAW IN SUPPORT of COMPLAINT with JURY DEMAND; CLAIMS ONE THROUGH FOUR

18. THE Following TUESDAY MORNING 2-4-2014 As the Court OPENED, the PLAINTIFF PRESENTED A Three PAGE "Motion To Terminate (FiRE) Counsel"- Giving REASONs WHY, including - NO COMMUNICATION with PLAINTiFF SINCE HiRING; NO Discovery, etc AND REQUESTed To see A Competent Doctor due to Mental Damages AlREADY DONE SiNCE September 16th when BoND wAS Revolked AND PlACED iN Jail Till 2-20-14.

19. Defendant KNOWiNG PlaintiFF's WEAKEN Mental STATE AS iN FoRmed iN iNiTial Jail INTERView - All HE HAS To do is RAiSE His voiCE CHALLENGiNG ANYTHiNG the PlaiNtiFF SAY's AND the PlaiNtiFF will COWER FRom FEAR AND Allow the Defendant To TAKE over Complete ConTroll OVER-RiDiNG the PlaiNtiFFs BES't INTEREST- Wish's AND Do whatever HE wANTED at that TiME As the Records will show HE did.

20. DeFeNDANTs Reply iN OPEN CoURT To Plaintiffs Motion To FiRE Him violAting FloRiDA BAR AND CoNStitutioNal Rules, With a Loud VoiCE: "I DoN't KNOW How You EXPECT To ARGUE THis DAMN CASE by YouRSElf, MisTee." (T.T.P.10). Totally DisRespecting the Wishes of the PlaiNtiFF NoT WANTiNG the DefeNDANT To MisRepreseNt Him ANyMoRE AND Account of His FAilURE so FAR of NoT HoNoRiNG ANy thing HE Had PRomiSED to BE HiRED, Resulting iN the MAximum SeNteNce.

21. Defendant wAS Well AWARE of JAils DeNial of All PlaintiFF's PRESCRibed MEDicatioNs AND CHemo theRAphy FoR CANCER - Resulting iN the PRoGRESSiVE Mental AND PHYsical Problem's BEFoRE AND AFTeR His HiRiNG; YET The Defendant BECoME's A QUALiFiED MENTAl Doctor AgaiNST The PlaiNtiFF, A. THREE TiMES iN His Reply to the CouRT oN T.T. PAGE 14. STAtiNG AGaiNst the PlaiNtiffs MotioN THat The PlaiNtiFF Did NoT NEED To SEE A DoctoR - REPlYiNG

9

B. "Judge, WHAT I DO AS A ROUTINE PART of MY
   INITIAL INTERVIEW, I ASK About MENTAL
   DIFFICULTIES AND THERE WAS NO REPORTED--"

22. AGAIN THE RECORD'S show that the DEFENDANT HAD NO
INTENTION of DEFENDING the PLAINTIFF with ANOTHER FALSE STATE-
MENT, FRAUD THAT the PLAINTIFF NEVER SAID OR IMPLIED
CONSTITUTING FRAUD ON the COURT AND PLAINTIFF WHEN HE
STATED ON PAGE 32 THAT
   "BASICALLY, HIS VERSION (MEANING THE PLAINTIFF) OF THE
   FACTS ARE SIMPLY THIS: I SHOULD NOT BE CONVICTED
   OF THIS. THERE'S REASONABLE DOUBT IN THIS CASE
   AND/OR I DIDN'T EVEN DO IT."

## CLAIMS FOR RELIEF

1. SEE Enclosed Motion for "MEMORANDUM of LAW in SUPPORT of COMPLAINT with JURY DEMAND, CLAIM'S ONE through FOUR"; Entering SPECIFIC DETAILS FOR EACH CLAIM THAT NO REASONABLE Defense ATTORNEY would do AGAINST His OWN Client the PLAINTIFF, constituting FRAUD AS CLAIMED, with VIOLATION of CONSTITUTIONAL AND CIVIL RIGHTS.

2. ARGUMENT FOR CLAIM # 1
   FRAUD AGAINST PLAINTIFF-MisRepresentation

3. Plaintiffs SENTENCE WAS BASED on Evidence KNOWN To Be FALSE THAT NEVER HAPPENED, BUT the Defendant KNOWing it would GREATLY influence the Judge's Dislikes AGAINST the PLAINTIFF including But Not Limited To: MILLER V. PATE, 386 U.S. 1 (1967). THAT ARE NO PLACE ELSE in the FACE of the RECORD'S Except during SENTENCE Mitigation T.T. Page 168-176, by the DEFENDANT

A. "I KNOW Judge LAMBERT very Well" "BEFORE HE WAS on the Bench."
B. "it will RESULT in DEATH or SERIOUS Bodily INJURY To SCORES of People" (THAT NEVER HAPPENED)
C. "You've Got A Fish with the Bait."
D. "SENTENCE CAN BE HARSH" (3 Times),
E. "NEW CRIMINAL Code--JE6 SIGNED
F. "NOT To GO LIGHT" on Plaintiffs SENTENCE,
G. "It's A VERY GRAVE CIRcumstance" driving like that.
H. "HAD AN Accident OCCURED... NO Telling How MANY INNOCENT People THAT it could HAVE MAIMED AND Killed."
i. "This CRIME OCCURRED UPon the WRONGFULNESS AND The DANGEROUSNESS of His Conduct"
J. "THE ONLY MITIGATION I FIND is His AGE AND MEDICAL Condition."

K. "I'd like To SAY he's leARNED A lesson BUT THAT
STATEMENT would HAVE NO CREDibility At All,"

L. "ENGAGED iN A DANGEROUS RUN wheRE The OFFiceRs
could HAVE Been killed OR INJuRED OR ANYBODY
Else could HAVE Been killED OR INJuRED,"

M. Judge Gives Plaintiff Peemission to Tell His side,
with Defendant iNtentionally INTERRupTiNG To
sTop THE PlainTiff challenging the Plaintiffs
CREdibility with QuestioNs PresentiNg NO DEFeNSE.

N. Defendant's iNterRupts stating: "WHAT I WANT?"-
"WHAT DO You GOTTA SAY"

O. "ITS Not All ABout You WHAT ARE You GONNA SAY
To THE FAMily WHEN You Kill THEiR cHild
OR RUN OVER THE TOP of THEM OR SOMETHING
Like THAT"

P. "I HAVE THis Vision iN MY HEAD - A kiD could HAVE
STEPPED ouT IN FRONT of You..."

4. Defendants "Actual BiAs" GENUINE PREJudicE DuRiNg
Sentencing-AGAinst the Plaintiff is veRy Relevant As
is SHOWN FROM THE FACE of the RECORD By the DefendaNt's
OWN WORDS IN PARENTHESIS " " FROM T.T. PAGES 168-176 FRAUD

5. Defendants OWN WORD'S iN FluenceD the Judge to
Sentence the Plaintiff To the MAXiMuM Sentence of 15
(FiFtheen) yeaRs FoR Fleeing AND Eluding AND 5 (FIVE) YEARS
FoR No DRiver Licensse that is NOT CoMPAiRAble To siMilAR
Sentences foR siMilAR OFFeNSES.

6. A LiE is A LiE, No MATTER WHAT iTs SUBJeCT; ESPECiALLY iF
it is iN ANY WAY RELEVANT To THis CASE AND DOES APPly.
NAPuE v. ILLiNois, 360 U.S. 264, 269 (1959).

1.  ARGUMENT FOR CLAIM #2 by Multible Accounts, FRAUD-PASSIVE MisRepresentation by Silence, PROMISSORY FRAUD, with FRAUDULENT AND Active CONcealment of Not PRESENTING KNOWN Evidence PROVING the "ARREST Probable Cause AFFidavit" WAS Falsified AND USED AGAinst the Plaintiff IN Violation of the Fourth AMENdment of the U.S. Constitution Defendant WAS HiRED To do.

2. Plaintiff will NOW PRESENT the Defendant's Actual FRAUD, PASSIVE MisRepresentation by Silence, Promissory FRAUd, FRAUDulent AND Active ConcealmENt of KNOWN Evidence showing ABsolute PRoof that the "ARREST Probable CAUSE AFFidavit" USED AGAinst the Plaintiff WAS Falsified In which the DefendANT WAS HiRED To PRESENT To the Court which the Court RECORDS To Follow Will PROVE the Defendant HAD No intention of PeR-forming His PROmiSES made To BE HiRED or ReveAl THAt Evidence constituting PROMISSORY FRAUD-COMMON LAW FRAUd AGAinst the Plaintiff.
   A. SEE ENClOSED "MemoRANDum of Law" claim #2 show-
      iNG SPEcific DeTails Needed for a JUStiFied DeCision.
   B. THE MAIN PURPOSE AND PROmiSES MADE by the Defendant
      To Be HiRED was To HAVE No TRial AND PRoduce PHoto's of
      The REGioN-Distance BetweeN the Motel Plaintiff Left
      FROM Before TuRNiNG on To 29th stREEt as the iNitiation-
      PRimi Facie REQuiRED was ImPossible to HAPPEN as wRote.
   C. SHowiNG CleAR AND ConviNciNG PROOF that the ARREST
      PRobable Cause AFFidavit was Falsified, Also Deputys TestimoNy.
   D. Making the ARREST AFFidavit AND All thAt FollowED
      TaiNTED Evidence - FRuit of the PoisonousTREE Doctrine
   E. BECause iN REAlity - NO LEGAL LAWFul REASON
      Exsisted for the Deputy To Target AND CHASE After
      The Plaintiffs Vehical LEaviNG the Motel with NO
      stop siGN, A PARKiNG SPot Not Lot As Testified AND
      THEN TuRNiNG on To 29th stREEt RiGHt AccROSS 55th AVE.
      At the South END of the Motel iN less than 50 feet.

F. IN Which the Defendant HAD AGReed Beforehand To File A "SUPPRESSION of Evidence" Motion To The court With PHoto's AND COPY of ARRest Probable Cause AFFidavit To Be Ruled As Tainted Evidence-Fruit of Poisonous TREE THat WAS Illegally OBTAINED With No Legal REASON To Persue Plaintiff by ARResTing Deputy,

G. TAINTED EVIDENCE DOES NOT QUALifY As A LEGAL PRobable Cause To TARGET AND CHase Plaintiff,

H. Defendant KNOWingly Allowing Deputy's FalSE Testimony AND Falsified ARRest AFFidavit IN DiRECT Violation of Plaintiffs FOURTH Amendment to the UNITED STATES Constitution After Being HIRED is FRAUD,

I. Defendant MADE NO OBJEctions DURING the ENTIRE TRial Proceeding AGAINSt MANY ImPRoper QuesTions With REPly's KNOWN to Be False Protecting the Illegal Actions of Deputy,

J. instead the oNly TimE Defendant interrupted was When the Plaintiff Tried to Defend Himself As the RECORDS Will SHow.

K. A Lie is A Lie~ No MATTeR who SAYs oR Imply's it.

3. Defendant Was iNformeD by the Plaintiff during the initial iNterview that PRioR A TToRNey's AND Jail INmates HAD CONFIRMED THAT Plaintiff's ARResTing Deputy BUSTAmante ID#5683 HAd A Bad RePResentation - PATTERN of BeHavior Using the Identical SAme PATTERN HE HAd USED AGAINst THEM and Plaintiff consisting of;

A. MAKing Illegal TRAffic stops.
B. Falsifying PoliCE REPoRts (ARRest AFFidavits)
C. LYiNG To the Court To GAIN His Conviction

4. Defendant's "Active Concealment," That was His Duty To do, But By NOT OBJECTING To THE ARESTing DEPUTY EDUARDO Bustamante BADGE I.D. 5683, Lying To the Court and Jury To Gain His own Conviction over the Plaintiff DURING Trial is FRAUD By Silence AND MAL PRACTICE Against THE DEFENDANT AS Claimed IN Direct violation of THE Plaintiffs 4TH 6TH AND 14TH AMENDMENTS To THE United States Constitution - MisREPRESENTATION by Silence when it was the Defendants Duty To OBJECT KNOWING Beforehand THAT THE Deputys Testimony was NOT TruthFul.

5. Defendant Being AN EX-LAW ENForcement Officer could Help Explain WHY HE did NOT OBJECT OR QUESTION The AREST-ing Deputy's Testimony KNOWing it was NOT TRUE during TRIal OR during His CROSS-EXAMINATION where-as INSTEAD of Question-ing HOW THE DEPUTYS Testimony could BE TRUE THE Defendant immediately ONLY ASKED QUESTions that would STRENGTHEN THE STATES CASE AGAINST THE Plaintiff AND Make the Deputy's FALSE Testimony seem MORE Truthfull To the Jury AND Court By the Defrndants "FRAUDULENT CONCEALMENT" by His SUPPRES-sion of THE TRUTH that HE was HiRed AND "LEGALLY BOUND To REVEAL" iN Defending the Plaintiff AND Failed WHich is "PASSIVE MisREPRESENTATION" - Fraud

6. THE STATE's STAR WitNESS DURING Trial Pages 40-41, "DEPuTy BusTAMANTE" Testified that His PRIMI-FACIE ARREST Probable Cause REQUIRED by law To TARGET AND CHASE AFTer the Plaintiff for a "Traffic violation" AND Pulling Him over BECAUSE of the violation But NEVER WROTE A Ticket FOR THAT violation That Did NOT HAPPEN AS WROTE OR TESTIFIED By the Deputy with No OBJECTions by the DefendANT OR CROSS-EXAMINATion on That MAJOR DEFENSE for the Plaintiff.

7. THE DEPUTY's Testimony AGAINST the PlAINTIFF COPIED off Trial Transcripts PAGES 40-41 include:

A, The Plaintiff, "HE Failed To COME To A COMPLETE STOP-- BEFORE ENTERING THE ROADWAY,"

B. "AFTER THAT, I slowed down AND I seen the vehicle, THEY Got RIGHT BEHIND ME,"

C. "So what I Did, HE WAS TAILGATING ME for A MINUTE"

D. "WHAT I Did is I Pulled over,"

E. "I WAIT For Him to PASS ME;"

F. "However, he-- he TURNED into, I Believe, 29th street heading WESTBOUND."

G. "AND I WAS thinking about Pulling Him over BECAUSE of the violation, AND

H. " BECAUSE of the Traffic violation YES,"

8. THE Defendant's Mis REPRESENTATION FRAUD by His Concealment AND NOT OBJECTING OR PRESENTING KNOWN Evidence (PHOTOS) in the Plaintiff's FAVOR; Allowing the plaintiff's conviction To BE BASED on Evidence AND Testimony KNOWN To BE False AND UNTruthful, (Miller v. Pate 386 U.S. 1(1967))

9. Allowing the USE of the Deputy's PerJURED Testimony with THE FalsiFied Probable Cause THat WAS WRITTEN As the MEANS To CHASE AFTer and STOP the Plaintiff LeAVING the Motel WITH NO LEGAL PROBABLE CAUSE as the iNitiATioN of THis CASE AND without which there would Be No Case AGainst the Plaintiff, THaT was Provoked by the Deputy's Actions.

10.        THE DePuty's OWN Testimony Vs. PHotos of CRIME Scene:

(a). Plaintiff's vehicle leaving the PARKING Lot-LANE or SPot THAT only Holds one vehicle AT A Time with NO STOP SIGN Joining Directly To 55th AVE AND Has to BE AlreAdy PARked AND STopPED Before it could LeAVE AND Cross over 55th AVE, To 29th street Less than fifty (50) feet from the Motel DooR-Room Plaintiffs Vehicle Left From.

# EXHIBIT

# PHOTOS OF CRIME SCENE







(b). How can a Parked vehicle Leaving Motel catch UP with a Passing vehicle Traveling the Speed limit of 35 M.P.H. in Less than fifty Feet Before Turning onto 29th street ??

(c). IF Plaintiff's vehicle Had caught up with the Passing vehicle AND TAILGATED Him for a Minute — THEY Both would Have Been All THE Way to Route 40 Stoplight, THAT is WAY PASS 29th street As Testified by the Deputy.

(d). "I Pulled over, I wait for Him to PASS ME": THERE is NO PLACE To Pullover—STOP and wait for a vehicle TAIL-Gating Him To Pass: ACCOUNT of the APROX. EIGHT inch CEMENT CURB—PREDESTRIAN Sidewalk AND FENCE Directly Beside 55th AVE. Leaving No PLACE for Deputy To Pull off the SHoulder of 55th AVE As Testified By the Deputy AS His PROBABLE CAUSE To PERSUE After Plaintiff.

(e). 29th street Plaintiff TURNED onto is RIGHT ACCROSS on the other Side of 55th AVE Less than 50 Feet FROM THE Motel Door Plaintiff's vehicle Left FROM

(f). Giving the DEPUTY NO LEGAL REASON As Testified To chase AFTer the Plaintiff WITH THE INTENTION OF STOPPING HIM making Both the Deputy's Testimony AND The Written Probable Cause "FRUIT of THE POISONOUS TREE".

(g). TAINTED EVIDENCE THAT CANNOT BE USED IN ANY CRIMINAL Proceedings AGAINST the PLAINTIFF in which,

(H). THE DEFENDANT KNOWINGly REFUSED To OBJECT to which is FRAUD—DECEIT AGAINST the PLAINTIFF,

(i). PHoto's IN ENCLOSED Memorandum of LAW Motion, As ABSOLUTE PROOF To EVERY statement SUPRA.

# EXHIBIT

# PROBABLE CAUSE AFFIDAVIT

| Arrest Code: FELONY | Court Case Number: | Agency Case Number: 12034499 |
|---|---|---|

| Defendant Name: SUTTON JR | DORSEY | WASHINGTON | DOB: 10/11/51 |
|---|---|---|---|

PROBABLE CAUSE AFFIDAVIT:

(Specify probable cause for each charge)

Before Me, the undersigned authority personally appeared _Dep. Bustamante #5683_ **ORIGINAL,**

who being duly sworn, alleges, on information and belief, that on the ___20___ day of _November 20 12_

in _Marion_ County, Florida the defendant did:

ON 11/20/12 WHILE ON ROUTINE PATROL, WRITER OBSERVED A GREEN VEHICLE COMING FROM A PARKING LOT WHICH FAILED TO COME TO A COMPLETE STOP BEFORE ENTERING THE ROAD WAY AT 3000 BLOCK OF NE 55TH AVE. WRITER CONTINUED TO TRAVEL SOUTHBOUND ON NE 55TH AVE AND OBSERVED THE LISTED VEHICLE AGGRESSIVELY SPEEDING UP GETTING TO CLOSE TO WRITER'S PATROL VEHICLE. WRITER PULLED ON TO THE SHOULDER OF THE ROAD WAY AND WAITED FOR THE LISTED VEHICLE TO PASS, HOWEVER, THE LISTED VEHICLE TURNED EASTBOUND ON NE 29TH ST HEADING TOWARDS NE 52ND CT. WRITER DROVE TO NE 52ND CT WHERE WRITER OBSERVED THE SAME LISTED VEHICLE AGGRESSIVELY SPEEDING TOWARDS EAST SILVER SPRINGS BLVD. AT THIS TIME, WRITER VISUALLY ESTIMATED VEHICLE'S SPEED AT 55 MPH ON A 35 MPH RESIDENTIAL ZONE, AT WHICH TIME, WRITER TURNED AROUND AND BEGAN TO FOLLOW THE LISTED VEHICLE BEARING FLORIDA TAG 768NUU. WRITER ACTIVATED THE LIGHTS AND ATTEMPTED TO DO A TRAFFIC STOP ON LISTED VEHICLE AT APPROXIMATELY THE 4900 BLOCK OF EAST SILVER SPRINGS BLVD. THE LISTED VEHICLE FAILED TO STOP AND CONTINUED TO TRAVEL EASTBOUND ON EAST SILVER SPRINGS BLVD. THE LISTED VEHICLE DROVE TO THE SIX GUN PLAZA AND CAME TO A COMPLETE STOP FOR A SHORT MOMENT, AT THIS LOCATION, A WHITE FEMALE CAME OUT FROM THE PASSENGER SIDE DOOR, AT WHICH TIME, WRITER ADVISED HER TO GO BACK INSIDE THE VEHICLE FOR SAFETY PURPOSES, HOWEVER, SHE ADVISED " I DO NOT WANT ANY PART OF THIS", AT WHICH TIME, THE LISTED VEHICLE STARTED TO DRIVE AWAY. WRITER FOLLOWED THE LISTED VEHICLE AND ACTIVATED SIRENS. THE LISTED VEHICLE KEPT DRIVING AWAY ATTEMPTING TO ELUDE WRITER. THE LISTED VEHICLE WENT BACK ON EAST SILVER SPRINGS BLVD HEADING WESTBOUND. THE LISTED VEHICLE TURNED RIGHT ON NE 14TH ST HEADING SOUTHBOUND AGAIN ATTEMPTING TO FLEE FROM WRITER. WRITER CONTINUED TO FOLLOW THE LISTED VEHICLE WHICH TURNED RIGHT ON NE 36 AVE HEADING NORTHBOUND. THE LISTED VEHICLE KEPT DRIVING NORTHBOUND AND TURNED LEFT ON NE 24TH ST HEADING WESTBOUND, AT WHICH TIME, THE LISTED VEHICLE AGGRESSIVELY SPED UP TO 70 MPH IN A RECKLESS MANNER. THE LISTED VEHICLE TURNED RIGHT ON NE 25TH AVE HEADING NORTHBOUND ATTEMPTING TO ELUDE WRITER. THE LISTED VEHICLE TURNED RIGHT ON NE 35TH ST HEADING EASTBOUND AND AGGRESSIVELY SPED UP, AT THE APPROXIMATELY 2700 BLOCK NE 35TH ST, WRITER OBSERVED A WHITE POWDERY SUBSTANCE WHICH WAS THROWN FROM THE PASSENGER SIDE. THE LISTED VEHICLE CONTINUED TO TRAVEL EASTBOUND WITHOUT REGARD FOR THE RED LIGHT ON NE 36TH AVE. THE LISTED VEHICLE RAN THE STOP SIGN ON THE INTERSECTION OF NE 35TH ST AND NE 55TH AVE. THE LISTED VEHICLE TURNED LEFT ON EAST SILVER SPRING BLVD HEADING EASTBOUND AGAIN RUNNING A STOP SIGN. THE LISTED VEHICLE AGAIN SPED UP ATTEMPTING TO FLEE FROM WRITER. THE LISTED VEHICLE TURNED LEFT ON NORTH HWY 314 HEADING NORTHBOUND. AT THIS TIME, AT APPROXIMATELY THE 10700 BLOCK OF NORTH HWY 314, WRITER CONDUCTED A PRECISION IMMOBILIZATION TECHNIQUE MANEUVER IN ORDER TO STOP THE LISTED VEHICLE DUE TO HIS DISREGARD FOR SAFETY AND RECKLESS DRIVING BEHAVIOR. WRITER RAN TOWARDS THE NOW DISABLE VEHICLE AND GAVE VERBAL COMMANDS TO THE DRIVER TO STEPPED OUT OF THE LISTED VEHICLE, WHICH HE REFUSED. WRITER, ALONG WITH SEVERAL DEPUTIES HAD TO TAKE THE DRIVER/DEFENDANT DORSEY WASHINGTON SUTTON OUT OF THE LISTED VEHICLE. WRITER PLACED THE DEFENDANT UNDER ARREST FOR LISTED CHARGES. THE DEFENDANT PROVIDED WRITER WITH A FLORIDA IDENTIFICATION CARD. COMPUTER CHECK REVEALED THAT THE DEFENDANT HAD A SUSPENDED DRIVER'S LICENSE. ALSO IT REVEALED THAT ON 8/24/92 THE DEFENDANT HAD BEEN CLASSIFIED AS A HABITUAL TRAFFIC OFFENDER AND NEVER HAD HIS DRIVER'S LICENSE REINSTATED. IT ALSO SHOWED MULTIPLE SUSPENSIONS FOR DRIVING UNDER THE INFLUENCE. THE DEFENDANT ADVISED HE WAS SUFFERING FROM SHOULDER PAINS. MEDICAL PERSONNEL RESPONDED TO THE SCENE AND TRANSPORTED HIM TO MRMC FOR MEDICAL TREATMENT. POST MIRANDA INTERVIEW, THE DEFENDANT ADVISED HE KNEW HIS DRIVER'S LICENSE WAS SUSPENDED, HOWEVER, HE STATED HE DID NOT KNOW HOW BAD HIS RECORD WAS. WRITER ASKED THE DEFENDANT WHY HE ATTEMPTED TO FLEE AND ELUDE WRITER, AT THIS TIME, THE DEFENDANT ADVISED HE DID NOT KNOW, HE STATED "I LOST IT, I DO NOT KNOW WHY I RAN, AND IT WAS A STUPID DECISION." DEPUTY THRORESEN ID 1168 RESPONDED TO MRMC. WRITER ISSUED THE DEFENDANT CRIMINAL UTT#4287GWN FOR FLEEING AND ELUDING AND CRIMINAL UTT#4288GWN FOR DWLSR HABITUAL OFFENDER.

SWORN to and SUBSCRIBED before me                          _Bustamante #5683_

1. Claim #3, Actual and Promissory Fraud, Misrepresentation in violation of Plaintiff's 4th, 5th, 6th and 14th Amendments to the United States Constitution when Defendant PREPARED THE "Stipulation for Permanent Revocation of Driver's License" Against the Plaintiff.

2. Plaintiff will Present THE Defendant's DECEPTION-FRAUD where He Concealed His PREMEDITATED Actual Plan to PROSECUTE THE Plaintiff instead of Defending Him As the FACE of the RECORD will clearly show Because,

A. THERE WAS NO COMMUNICATION between Defendant AND Plaintiff SINCE ONE Time Jail Interview when The Defendant WAS HIRED IN Mid October, 2013.

B. Defendant PurPosely concealed from the Plaintiff CON-TRARY to PROMISES MADE To Be HIRED - THAT Him AND The Prosecutor HAD AGREED to 20 PAGE Jury Instruction's on 1-30-14 and to HAVE a Trial Before Defendant's First Day in Court or Talk To Plaintiff SINCE Hiring,

C. Defendant NEVER SHOWED the Plaintiff the Jury Instructions OR Told Him THAT HE Had ALREADY PLANNED To HAVE a Trial AGAINST Plaintiff's Wishes

D. ON Friday 1-31-14 Defendant's First Day in Court AND His First Day Seeing Plaintiff SINCE Hiring when HE WALKS UP To the Podium AND Tell's the Judge "WE" ANNOUNCE READY For Trial Without The Plaintiffs APPROVAL OR Concent.

E. THEN Calls For a Bench Counsel with the Judge AND Prosecutor with the Judge's Reply, "NO COMMENT" and Tells The Plaintiff SEE you MONDAY on 2-3-14 Not Telling the Plaintiff ANYTHING Else

F. Defendant CONCEALS from the Plaintiff THAT Him and THE Prosecutor HAD Set UP To Pick A JURY on The Following

Monday 2-3-14 AND HAVE the Trial The Next Day
Tuesday 2-4-14 THEN

G. over the Weekend - February 1 and 2nd, The Defendant
PREPARED A "Stipulation for Permanent Revocation
of Driver's License" AGAINST the Plaintiff violating
Plaintiff's 5TH AND 6TH Amendments to the United
STATES Constitution AND AGREEMENT To BE HIRED, con-
stituting FRAUD AGAINST the Plaintiff As CLAIMED:

3. Defendant's SECOND APPEARANCE To Both the Plaintiff
AND the Court on MONDAY 2-3-14, BEFORE The Judge Enters
THE COURTROOM, THE DEFENDANT confronts the Plaintiff with
ONLY ONE Issue on His Mind Telling the Plaintiff "HEAR,
SIGN THIS" AND HANDS The Driver License Revocation To THE
PLAINTIFF AND Telling the PLAINTIFF AGAIN "TRUST ME" AND
"Sign this" WHEREAS

   (a). THE Plaintiff REFUSED To SIGN it - REMINDING Defendant
   THat HE HAD Promised To CHALLENGE The Driver License REVO-
   cation BECAUSE Florida D.M.V. WAS using A Undocumented
   1976 D.U.I. From the STATE of Virginia THat Virginia D.M.V.
   HAD No RECORD of AND ONCE THAT CHARGE was Taken off
   The Florida D.L. Revocation Also would BE REMOVED.

   (b). with the Defendant's ANSWER AGAIN "TRUST ME" AND
   Just Sign it BECAUSE ME AND MR. Robinson (Prosecutor)
   HAVE Already GOT EVERYTHING Worked OUT For Your
   BEST INTEREST

   (c). Plaintiff still NOT WANTING To SIGN the Stipulation But
   still Trusting AND Depending on the Defendant who FINALLY
   PERSUADED the Plaintiff To Follow His Instructions To SIGN
   The Stipulation AND Also ANSWER

   (d). IF The Judge Ask you, Tell Him you KNEW your Driver
   License WAS REVOlked which the Plaintiff Being UNLEARNED
   IN LAW SIMPLY did What the Defendant Told Him to do.

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
OF THE STATE OF FLORIDA, IN AND FOR MARION COUNTY

STATE OF FLORIDA

C A S E   N O
2012-CF-003751-A-Y

VS

DORSEY WASHINGTON SUTTON JR

## STIPULATION FOR PERMANENT
## REVOCATION OF DRIVER'S LICENSE

COMES NOW, BRADLEY SCOTT ROBINSON, Assistant State Attorney, and CHARLES HOLLOMAN, Attorney for the Defendant, DORSEY WASHINGTON SUTTON JR, and stipulate and agree that the Defendant's license was permanently revoked on November 20, 2012, the date of this incident..

BRADLEY SCOTT ROBINSON
Assistant State Attorney
Florida Bar No. 87781

_Read + explained_
_approved by S_

CHARLES HOLLOMAN   2/4/14
Defendant's Attorney
Florida Bar No. 403c18

X _Dorsey Sutton_   2/4/14
DORSEY SUTTON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above has been furnished to Charles Holloman, by hand or mail delivery or electronic service this ____ day of February, January, 2014.

/s/ _____

FILED IN OPEN COURT
Office of Clerk of Circuit Court
Marion County, Florida
as _____ 20 __
David R. Ellspermann, Clerk
BY _____ D.C.

256

19A

Q:\M-2012-53600

110



(e). Defendant still Concealing - FRAUD The Fact THAT AS SOON AS HE PRESENTED the D.L. STIPULATION To the Judge, GUARANTEEING The STATES Victory, IMMEDIATELY AFTER THAT WAS PRE-PLANNED they WERE Going To Pick the JURY AND HAVE A TRIAL AGAINST the Plaintiff the Following MORNING 2-4-2014.

(f). THE Judge **NOT THE DEFENDANT** WAS the ONE To UP-DATE The Plaintiff: "We'll Pick A Jury this MORNING" With Trial 10 A.M. THE NEXT MORNING ON 2-4-2014

(g). THE Plaintiff NOT understanding His Legal Rights AND At this Point Fully TRUSTING AND OBEYING the Defendants COMMAND To "TRUST" HIM INTO SIGNING the STIPULATION AND PRESENTING it To the Judge CLEARLY SHOWS THAT it WAS the Defendant **HIMSELF** who WANTED BOTH THE STIPULATION HE PREPARED AND Trial AGAINST the Plaintiff That is INTENTIONAL MisREPRESENTATION FRAUD AGAINST the Plaintiff As Claimed

4. THE DEFENDANT Himself ADMITTED that HE WAS ASSISTING THE STATE To PROSECUTE the Plaintiff with **NO INTENT** To DEFEND Him AS HIRED To do BY His own WORD'S.

A. "MR. Holloman (DEFENDANT): AND if I may, Judge, CHARLES Holloman for the RECORD, WHAT I HAVE DONE is IN ADDITION To MY SIGNATURE AND DATE, I HAVE DRAWN A LINE THAT SAYS, READ, EXPLAINED AND APPROVED By THE Defendant AND PUT AN "X" THERE AND HAD MR. SUTTON (Plaintiff) SIGN it."

B. Followed By "MR Robinson (PROSECUTOR): OH, I Need to SIGN it Judge, I'm SORRY."

C. AFTER the Defendant HAD Given the D.L. STIPULATION To the Judge ON Pages 4 AND 5 Court Proceeding 2-3-14, is WHEN the PROSECUTOR Needed to SIGN it ASSURING THAT it WAS the Defendant THAT WROTE it.

20.

D. Defendants own WORDS AGAIN HARMING the Plaintiff By His D.L. STiPulATion WAS PeRmaNently Revolked By STATing on Trial TranscriPts Page 75, "MR. Holloman; RiGHT. AND WE ReiTeRated that. I AlwAYS REITERATE THAT IN OPENING EVEN THOUGH its NOT EVIDENCE."

E. Defendants D.L. Stipulation ESSENTiAlly HAving His Client ADmit HE is Guilty WithOUT The oPPoR-Tunity to OBJect to it, BEING USED OVER 30 (THiRTy) TIMES DURING 2-4-14 Trial AGAiNst the Plaintiff on PAGES; 4,5,7,8,9,33,75,77,90,91, 97,98,131,132 AND PAGE 133 THAT NO REASONAble Defense AttoRney Would HAVE DoNE AGAiNst His ownClient.

F. Defendants "Independently FRAudulent Conduct," SUPRA is FoReign To the Duties of any Defense AttoRney AND FAlls outsIde the ScoPe of Client RepResentation, FRAud AND violated PlAintiff's FUNdAmental RiGHTs under Article I Section 9, Florida Constitution DENIAl of DUE PRocess OR BE ComPelled iN any CRiminAl MAtter To BE A WiTness AGAinst one Self, Fl. R. APP. P. 9,141(b)(2), Florida BaR PreAmble And Rules 3 and 4

5. Defendants OWN "PREmEditAted FrAudulent TESTimoNEy" AGAinst the Plaintiff IN His PRESENTATion To the PRospective JuRor's on Monday 2-3-14 PAges 69-84 where HE PRESENTED ABSolutely NO DEFENSE for the PlAintiff AND EVERY STATE-MENT MADE WAS to INFluENCE the JuroR's To SIDE With THE STATE AGAinst The PlAintiff that EXCEEDS THE BOUNDS of ANY ReasonAble ProfessionAl AssistANCE REQuIRED of A DEFENCE AtToRNEy IN which THERE is A Good CHANCE THE Plaintiff would HAVE ENJOYED A Differant ResULt if BOTH THE DefendAnt AND the STATE HAD NOT BOTH PRosecuted

THE PLAINTIFF, FROM THE START of THIS CASE, JUST PART
of the Defendants TESTiMony to the JURORS iNcludS;

  a. "Do you like·· People DRIVING AROUND·· DON'T HAVE DRiveR License,"
  b. "THou shall NOT DRIVE without a DRiveR's LiCENSE,"
  c. "THou shall NOT DRIVE without A DRiveR's LiCENSE, Okay,"
  d. "But the JudgE will Give you the LAW·· As its WRiTTEN"
  e. (JuRy INSTRuCTioNS) "AND its JusT As SimPle as that,"
  f. "BECAUSE you DoN't MESS with the LAW,"
  g. (MOSES) "Coming down off the MOUNTAiN" it WON'T BE CARVED
     ON A TABleT,
  H. "But it will COME iN the JuRy INSTRuCTions that ARE APPRoved
     by the SUPREME CouRT".
  i. AND you kNOW where I'm GetTiNG at, VOIR DIRE
  J. "How many People Not Just iNJuRed,"
  k. "How mANy PeoPle it Has killed iN the LAST YEAR? It is INSANE"
  L. "We RECENTly Had a TRAGEty RiGHT HEAR iN MARioN County,
     EVERYBODY, IF You REMEMBER--
  M. "SCHool BUS Got RAMMED iNto PEoPle killed,"
  N. "BECAUSE somebody was TExTiNG."
  o. "HAVING FRIENDS IN LAW ENFORCEMENT ·WHAT
     VOIR DIRE IS
  P. Ask you this QuESTioN, How MANy PEoPle ARE ANTi-
     LAW ENForceMENT?
  Q. NOW WE'RE GoiNG To APPRoACH the BENCH NOW AND ThEN,
  r. WisPeRiNG··· LAWyERS DoN't wANT you To HEAR (SAME
     As Defendant did to Plaintiff on FiRST CouRT APPEARANCE 1·31·14).

6.    NOW TRyiNG to SHORTEN it- DefeNdANT CoNTiNUES foR the STATE
All AGAiNst the PLAiNtiFF's BEST INTEREST, All the WAY THRough
PAGE 85, But oN PAGE 83 the Defendants CoNclusioN HE
PRESENTED To the JuRy was " BECAUSE W HEN You Go BACK

AND APPLY THE LAW, NO MATTER What VerdicT you DO,
WHAT -- WHAT ARE THEY ENTiTlED To, THE STATE?
JUSTICE."
      PAGE 84: "AlRiGHTY, Good, YOU'RE ONE of US NOW,
LAND OF THE SHORT VOiR DiRE." with

7.   THE Following MORNiNG 2-4-14 during TriAl the DefendanT
LiED To the Jury Telling thEm that the PlAiNTiff's "VERsioN
of the Facts" that the PlAiNTiff NEVER SAiD or IMPliED
WhEN the DefendanT Told the Jury that the PlAiNTiFF
   SAiD "I DidN'T EVEN DO iT" (T.T. PAGE 32) That is
  FRAUD oN the COURT AND the PlAiNTiff.

8.   ANothER FAlSE stateMENT by the DefENdant oN T.T. PAGE 85
"YOU (MEANiNG the PlAiNTiff) WERE PlAcED oN ProbATioN that you
VioLATED." Fact the PlAiNTiff HAs NEVER VioLATed ANy ProbATioN.

9.   THE PlAiNTiff TRiED to FiRE the DefendAnT, T.T. PAGE, 10

10.   THE DefENdant PRESENTED NO PRESENTENCE INVESTiGATioN
With the PlAiNTiff, AS REQuiRED BefoRE TRiAl AND SentENciNG

11.   THE DefENdant NEVER DiscussED His Discovery oR His
ChANGE of PlANs With the PlAiNTiff oR PRETRiAl Discovery
OR EVEN HAD A Client-LAWYER RelAtioNship oNcE the
DefENdant WAS HiRED AND PAiD, EsPEciAlly NoT iNForMiNG
The PlAiNTiff HE HAD AGREEd With the STATE to HABiTuliZE
The PlAiNTiff's MAXiMuM SENTENcE, oVER the iNCoRRECT SCORE-
Sheet the DefENdant DiD NOT SHOW To the PlAiNTiff.

## CLAIM #4    FRAUD ON THE COURT AND PLAINTIFF, MISREPRESENTATION,

1. THE Defendant MR. Holloman, FROM the FACE of the RECORD WORD FOR WORD STOPPED His Client the PLAINTIFF FROM Presenting THE MAIN DEFENSE HE WAS HIRED and INTENTIONALLY Failed To do CONSTITUTING FRAUD IN violation of the Florida BAR Code of Ethics AND Conduct That NO REASONABLE Defense ATTORNEY would HAVE DONE AGAINST His OWN Client.

2. A LIE IS A LIE - FRAUD ON the Court AND Plaintiff MR. SUTTON once the Judge Had GIVEN MR. SUTTON Permission AND the OPPORTUNITY To PRESENT His OWN Defense To THE Court with NO INTERRUPTION by Counsel stateing To Let "MR SUTTON SAY WHAT HE-- Let MR. SUTTON Say His Piece."

3. MR. Holloman NOT THE PROSECUTOR **Intentionally** INTERRUPTED MR. SUTTONS Testimony to STOP Him From PRESENTing THE Illegal Actions Taken by the ARRESTing Deputy as the INITIATION- PRIMI FACIE REQUIRED AGAINST THE Plaintiff IN this CASE.

4. Without a Legal ARREST Probable Cause there would BE NO LEGAL REASON for the Deputy To Target OR CHASE AFTER THE Plaintiff's Vehicle Leaving the Motel as stated on THE Probable Cause USED AGAINST the PLAINTIFF; THERE FORE THERE would BE NO LEGAL CASE AGAINST the Plaintiff without The "TAINTED EVIDENCE" PRESENTed AND USED By Both THE written Probable Cause AND Deputy Bustamantes TESTimony.

5. COPied FROM 2-4-14 Trial Transcripts PAGE 109 where MR. SUTTON was Holding the "ARREST Probable Cause AFFIdavit" IN His HAND AND STATEing FOR the RECORD:

A. "THIS REPORT they Call Probable CAUSE, IF you SAY ONE THING WRONG, You'RE SUPPOSED to THROW it OUT.

I CAN POINT AT FOUR, four (as WRITTEN OR TESTIFIED)
without A DOUBT on that Film To these THAT HE
(MEANING ARRESTING DEPUTY) CANNOT BACK UP ARE
TOTAlly WRONG." NO WAY, SHAPE, OR FORM THAT
They ARE TRUE. LINES 3 through 9

6.  WHEREAS MR Holloman Falsely ACCUSED MR Sutton of Saying
Something HE did NOT SAY with A LIE - KNIFE - THREE TimES
CONSTITUTING FRAUD on the COURT AND MR. SUTTON, ON PAGE
109, LINES 13 through 21, with A LIE - FABRICATED Evidence;

A.  "You SAID HE (MEANING Deputy Bustamante) Pulled A KNIFE
     ON You. A. NO"
B.  "HE Pulled A KNIFE on you, A, NO"
C.  "So The OFFICER didn't Pull ouT A KNIFE? A. NO"
    THERE is No other PlAcE ON RECORD the word KNIFE
shows UP EXCEPT HEAR whore MR Sutton HAs to Defend His
OWN Credibility AGAINST MR. Holloman iN OPEN COURT.

7.  MR Holloman clearly showing His TRUE INTENTIONS NOT To
Defend or Allow MR SuTTon To PRESENT the DEFENSE HE WAS
PAID To do; INTENTIONALLY TAKING over Complete Controll of
MR SuTTon's TESTimony stopping Him from PRESENTING FoR
The RECORD WHAT ACTUALLY HAPPENED, ExPosing THE
Illegal ACTIONS As WRITTEN AND TESTIFIED by The ARRESTING
Deputy BusTamante

8.  ONCE MR Holloman HAD Accomplished what HE WANTED AND
WAS NOW iN Complete ControlL FORCING MR SuTTon To STOP His
OWN TESTimony AND ANSWER EVERY QUESTION STRengthening
The ProsecuTions CASE AGAINST MR SuTTon who AT This sTAGE
is MENTAlly BROKEN Allowing MR Holloman To TAke over

9.  Not ONE Single QUESTION THROUGhout The ENTIRE Proceeding

25

2-4-14 TRIAL TRANSCRIPT PAGE 109

1    don't want to (indiscernible) belongs.  Yes,

2    I'll say what I think.  Thank you.  Jesus is on

3    my side.  That is a whole lot of it and this

4    report they call probable cause.  If you say

5    one thing wrong, you're supposed to throw it

6    out.  I can point at four, four (indiscernible)

7    without a doubt on that film to these that he

8    cannot back up are totally wrong.  No way,

9    shape, or form is that true other than yes, I

10   took -- when he pulled the lights on me, yes, I

11   did go.  Yes, I do took off.  I want to get the

12   car home.

13   Q    He pulled a knife on you?

14   A    No, when he pulled the car out, and I

15   says, "Oh, it's time to go home."

16   Q    Oh, okay.

17   A    Oh, no, (indiscernible).  I'm sorry, I get

18   carried away sometimes.

19   Q    So the officer didn't pull out a knife?

20   A    No, no, no, no (indiscernible).

21   Q    You said he pulled out a knife on you.

22   A    No, no, no.

23   Q    I thought that's a little bit extreme.

24   A    No, no, I didn't mean nothing like that

25   myself.  But he pulled out the probable cause

By Mr Holloman WAS iN MR SuTTon's FAvor oR PLANNED
DefeNse CoNsTiTuTiNg ANother Claim of Mis RepresenTATioN -
FRAud AGAiNst the DefeNdANt, violating 1ST 6TH AND 14TH amend. to USC.

10.       ONCE MR Holloman HAD CoNtroll over MR SuTTon WiTh The
KNIFE Comments SUPRA, His Following QuesTioNs AssistiNG
THE STATE Not MR SuTTon WERE:

A.   "Q You kNow your liceNse WAS Revolked, Right?"
     Followed by

B.   "I'll TeNder the WiTNESS FoR CRoss-ExAmiNATioN."
     ENDING MR SuTTon Trying To Defend Himself.

C.       IN ADDiTioN To MR Holloman's ADverseriAl Behavior
     IN ProsecutiNg MR. SuTToN whom HE WAS SUPPOSED
     To BE ADVOCATiNG foR; His ProsecutoriAl Conduct
     ContiNUED iN His ExAmiNATioN of the STATES
     WiTTNESSES As Follows:

11.       THE Cross-ExAmiNATioN of DePuTy BuSTAmANTE, T.T. PAGE 54-
     57 With ALL of the 18 QuesTioNs AsKed by MR Holloman
     WERE SeArchiNG FoR ANYTHiNG THE STATE could use
     AGAiNst MR. SuTToN while PreseNTiNG NO DEFENSE That
     WAS AvAilable constitutiNG MisRepreseNTATioN - FRAud.
          MR. HollomaNS FiRsT QuesTioN:

A.   "Q Did HE (meaning MR. SuTToN). AppeAr to BE uNder THE
     INFlueNce of Alcohol? A. NoT To ME,"

B.   "Q You didn't smell ANy Alcohol oR ANything like
     THAT RiGHT? A. No."

C.   "Q THAT video TAPE AccurATely shows, I Remember AT
     LeAst oNE big iNTersectioN where there's A Red light.
     A. YES"

D.   "Q AND HE JusT GoES Right Through thAT, Right?
     A. YES, siR."

26

E. "Q WAS There A STOP SIGN THere THAT HE RAN oR SomeThing? Is tHAt wHAt First brought your ATTention To Him?"

"A. NO, There WAS Just the Parking lot. THere is A-- THERE is A Street That RUN AcRoss RIGHT NeXT To THe Motel (THAt is 29th Street Plaintiff TuRNed onto Leaving the Motel) theRe's A-- There is A STop SiGN; However, HE WAS Not DRiViNG on the RoAdway. HE WAS COMING OUT oF THE PARKiNG SPot,"

F. "Q So you were thinking then EVEN Before ANY of THis hAppeNed About coNsideRiNG whether oR NoT To STop Him For A TRaffic violation, CoRRect? A. YES."

G. "Q WAs he suPPosed to sTOP?··· is that city oRdiNAce, StAte LAW oR what?"
"A. ITS A FloRidA STAtuTe."

"MR Holloman: JudGE, I hAve No fuR ther QuesTions,"

12.    ConfiRmATioN By the Deputy Himself that MR SuTToN's vehical WAS iN A **PARKiNG SPOT** That HAd to BE stopped BeFoRe leAving the Motel AND;
THE Deputy's MiND WAS AlReAdY MADE UP To CHASE AFTee the Plaintiff's vehicle with NO LegAl ReAson:

A.    Also on PAge 41, LiNes 15 through 22 sTAting:
"My THINKiNG WAS, Well, We'll BoTh HeAd To 40, So whAt I did, I HEAD To 40···" MAKiNG The sToPPiNG oF MR. SuTToN's vehical AN IllegAl TRAffic sTOP with NO LegAl REAson To CHASE AFTee the Plaintiff.

27

13.      THE CROSS-EXAMINATION of Deputy THOMAS; Pages 69-74,
by Defendant MR Holloman where Every Question is For
The STATES Favor NOT MR. Suttons, constituting MisRepre-
sentation-FRAUD AGAINST THE Plaintiff with 28 Questions
including But NOT Limited to: THE First Question,

A.   "Q IT Looked like BUSTAMAN-- Deputy BUSTAMANTE
Almost FLIPPED, didn't it, IN that Patrol CAR?"
"A. THats -- THats the challenge that you Have,"

B.   "Q I'm Just curious About that BECAUSE --'cause --
But WHEN I WAS AN OFFICER, THE PIT hadn't Been
INVented yet. But how did they TRAIN you? I mean --"
"A. WE Go to --"

C.   "Q OH, By the Way, THE officer's view, when you'RE Pursuing
SOMEBODY Like THAT, You Guys' lives ARE IN danger, Too,
AREN'T they?   A. YES Sir."

D.   "Q··· you've been involved IN Cases where People Flew
into Mobile homes, CARS Go OFF The Road~A. YES, Sir."

E.   "Q·· THERE'S EVEN ONE CASE, AT LEAST ONE CASE,· Fatality,
I Think.  A. THat I would NOT KNOW --"

F.   "Q A. But there HAS Been Fatalities IN this, YES,"

G.   "Q AND IN this case -- so your TESTIMONY is IN this case
THERE was A Willful, WANTON disREGUARD for the Lives,
Property, AND SAFEty of others, CORRECT?"
"A. I'll AGREE with THat,"

H.   "MR Holloman: Judge, I Don't HAVE ANY other QUESTIONS. THANK You,"

28                        ?

14. THE Defendant - Defense Attorney MR. Holloman's "Final Closing ARGUMENT" to the Jury, SO utterly Failed To defend Against the Charges that the Trial was THE Functional Equivalent of a Guilty Plea, Rendering the Defendants Mis Representation - ACTUAL FRAUD As the Record will Show.

15. Defendants use of PERJURED Testimony to Gain the Conviction GREATLY INFLUENCED the Jury To Find the Plaintiff Guilty Presenting NO DEFENCE That was Available And the ATTACK on the Plaintiffs CREDIBILITY showing A "Conflict of Interest" concealing the Facts CONTRARY To The Promises made To Be Hired By Reinforcing - Comply menting ALL THE Actions Legal OR ILLEGAL Taken by the ARRESTING DEPUTY Against The Plaintiff, AND Presenting NO Defense which MAJORLY Did Materially COMPromise the Defense Available with FRAUDULANT RESULTS HARMING THE Plaintiffs Civil AND Constitutional Rights

16. THE Defendants FRAUDULENT STATEMENT'S during Closing ARGument Attacked the Plaintiff CREDIBILITY by FundamenTally unFAIR MEANS, By Presenting the UNTRUE - FALSE STATEMENTS THAT ARE NO PLACE ON RECORD EXCEPT IN the Defendant's Closing ARGUment when the Defendant

A. STATED A LIE To the JURY - FRAUD ON the Court that HELPED Finalize His version - NOT THE Plaintiffs of what The Defendant Intended the JURY to Believe That The Plaintiff was Guilty AND WAS NOT Trust Worthy. STATING what the Plaintiff NEVER SAID

B. "HE EVEN SAID (meaning the Plaintiff) THERES EVEN DENTS ON MY BUMPER, OKAY."

C. A LIE IS A LIE With the INTRODUCTION of UNTRUE FABRICATED Evidence "DENTS" AGAINST the Plaintiff with THE REST OF

29

THE Defendants Fraudulant Conduct of Presenting His
Version of what HAPPENED Verses what Actually HAPPENED.

D.   Defendants version To the Jury was that the Deputy's Patrol
Vehical was Actually Physically Pushing the Plaintiffs Vehical
Down the Road LEAVING "DENTS" IN THE BUMPER which is
Totally out of Context To what Actually HAPPENED OR IMPlyed
by the Plaintiff

E.   ' Followed by the Defendant Telling the Jury To Remember the
Video that showed that NO Patrol Car was Pushing the Plain-
Tiffs Vehical AND to Follow the Jury Instructions that will
Be Given to you, Guarantering The State's Victory over the Plaintiff,

F.   THE Plaintiffs Testimony was that the Police - Deputy's
Vehical was Following VERY CLOSE BEHIND THE Plaintiff's
Vehical NOT Allowing the Plaintiff to slow DOWN AS Testified
by the Plaintiff in Context,

G.   THE Plaintiff NEVER at any Time SAID OR Implied that
THERE WERE ANY "DENTS IN HIS Vehicals BUMPER" AS Stated
IN OPEN Court by the Defendant with the Rest of His closing
Testimony All AGAINST His own Client the Plaintiff That
No Competent Defense Attorney would Have Done in Violation
of DUE Process AND Constitution Rights Guarantee To All citizens,

17.   SEE COPY of Attached "Closing ARGument to the Jury" that
Guaranteed the States victory WITH the ASSISTANCE of the
Defendant AGAINST the Plaintiff CONSTITUTING FRAUD As claimed,

⟶ (a)   Defendants Final closing ARGument "UNDERMINED the Intogrity of the Judicial
Process AND IRREPARABLY CONTAMINATED the verdict; THERE FORE WE CANNOT say BEYOND
A Reasonable DOUBT THAT Defendants Last Comments Jury Heard did NOT CONTRIBUTE TO the verdict,

30

Claim #4

18.        Final Trial Closing Argument Page 135-138

→ (a). "Mr. Holloman: There was a big reference to earlier,
the defendant's entitled to his day in court and of course,
exercise his right to get on the stand and tell his side
of the story and what he's submitting for your consideration
is this, is that his desire to return that car home outweighed
any other desire. It would be much akin but not exactly
correct, of some one racing to the hospital or something
like that. He would have you to think that it was on that
same type of level, what they call a defense necessity,
something like that, and that usually applies on a life or
death situation. hear,

        As far as when he left the parking lot of the hotel or
motel or whatever you want to call it, there was no stop
sign there, there was some reference to some ordinance.
Of course, he denies that the officer ever saw him not stop,
all right? He admits that he did have officers behind him,
that he heard the lights, that he heard the siren, and he
made the conscious decision not to stop, and the reason he
made that decision was simply this: as he testified to, if I
had stopped, I would have had a towing bill, I would have had
this car impounded and every thing else, there would have been
all kinds of problems.

        Now, there's nothing in this evidence that contradicts that--
that they were going close to 100 or at 100, but we do know
that it was an excessive speed. Now surely he's thinking that
any body reasonable in their mind would think, you know, this
is pretty important getting this car home and its so important
that I cannot let these law enforcement officers stop me because
if I do, I'm gonna have to pay money for an im pound that's $500
as well as all the problems that get associated with that, so I
want to go home. Now, then we've got another thing, too. He's say-
ing, his testimony was that I did not drive that automobile that

31

### Claim #4
### <u>Final Trial Closing Argument</u> <u>Page 135-138</u>

PAST AND leave AND He gave the Testimony on the stand, look, The

**18 (b).** officers were pushing me. <u>He even said There's EVEN DENTS</u>
<u>ON MY BUMPER, okay?</u>

   So if we've got speeds close To 80 or 90 miles an hour As His
Testimony, these officers were Pushing him into that, All Right?..
Good. THey were pushing his CAR down the ROAD. NOW, you were
Able To see the video AND you'll be Able to look at that AND
you'll be able To see whether OR not you thought that he WAS
being Pushed down the ROAD. AND IN the end after all That's
done, of course, what happened was he was beaten by the
officer, beaten severely is what his Testimony WAS AND THAT
gives Justification as to why this is Just AN iNJustice iN the
first Place, All RIGHT?

   As I SAY, IMPortANt RIGHTs here at stake. THE citizen is entitled,
THat's government over there, Really. A citizen is entitled To HAVE
A Panel of citizens standing between us, between the defendant
As far as being Accused by the government, To make a decision.
People make it, so its Just As simple As that.

   I almost want To say what do you think, but its Not what you
Think. Its what's been Proven beyond AND to the exclusion of
every single Reasonable doubt and I Trust THis verdict will Be
iN very wise hands, THAt you'll follow the law set forth by The
Judge, And THAt you'll deliberate iN Good fAith To Try To --
To TAy to unroyal the amazing facts of This case. Thank you."
      THAT WAS MR Holloman's FINal Closing Argument↑

**18(c).**   IN which Mr. Holloman MisQuoting And Implying Mr. 9utton said something
That He did Not is Misrepresenting facts iN Evidence under Criminal law
§§ 2090; § 46.3; § 46.4; § 17; <u>FRAUD</u> that Amounted To the Substantial
DAMAGE of Guilt Plus the unreasonable MAximum Sentence of 20 years
That would not HAVe HAPPened iF NOT For Mr. Holloman <u>PROFoundly</u>
<u>Impressing the Judge AND Jury's Deliberations</u> by asserting facts
THAt were NEVER ADMiTTed as Evidence To Mislead the Judge AND Jury
iN A PREJudicial Way with MisRepresented Evidence,"that was Persuesive"
That Aroused the emotions Leaving the calm AND Logical Reasoning ABandoned↓

## RELIEF REQUESTED

1. WHEREFORE: Plaintiff REQUEST THAT THE COURT AND JURY GRANT THE Following RELIEF:

**A.** ISSUE AN INJUNCTION ORDERING THAT the Defendant is LIABLE IN BOTH His INDIVIDUAL AND OFFICIAL CAPACITY.

**B.** ISSUE A DECLARATORY Judgment STATING THAT:

(1). Defendant violated the Plaintiff's RIGHTS under THE 4th, 5th, 6th AND 14th AMENDments under STATE LAW.

(2). Defendant violated the Plaintiff's RIGHTS under THE DUE PROCESS CLAUSE of the 14th Amendment To THE UNITED STATES Constitution

(3). Defendant violated the Plaintiff's Fifth Amendment To the UNITED STATES Constitution BY COMPELLING THE Plaintiff To BE A WITNESS AGAINST Himself.

(4). Defendant violated the Plaintiff's First Amendment - FREEDOM of SPeech during TRIAL.

(5). Defendant violated the Plaintiff's Sixth AND Fourteenth Amendment To the United STATES Constitution By INTRODUCING FABRICATED EVIDENCE - FRAUD ON THE COURT AND Plaintiff Twice-Plus STATING Plaintiff HAD SAID ISSUES AGAINST Himself THAT THE PLAINTIFF NEVER SAID OR IMPLIED, THAT HARMED THE Plaintiff's outcome

(6). Defendant's FAILURE To PROVIDE ADEQUATE AVAILABLE DEFENSE is violation of Plaintiff's Sixth AND Fourteen$^{th}$ Amendment to the UNITED STATES Constitution.

(7). 10 Million Dollars for violation of Plaintiff's Constitutional RIGHTS.

**C.** AWARD COMPENSATORY DAMAGES in the Following Amounts:

33

(a). Seven Million Dollars Against the Defendant For PERMANENT EMOTIONAL AND PHYSICAL INJURIES Sustained As A Result of the Claims SUPRA THAT would Not HAVE HAPPENED Without THE DEFENDANT Assisting the STATE AGAINST the Plaintiff THAT NO Reasonable Defense Attorney would HAVE DONE AGAINST His own Client the Plaintiff

(b). THREE Million Dollars AGAINST the Defendant For the Mental AND PHYSICAL INJURY RESULTING FROM Defendants Failure To PROVIDE ADEQUATE AVAILABLE Defense Before & DURING Trial Especially during Sentence MitiGation.

(c). THREE Million Dollars For the PUNishment including Deprivation of Liberty AND AMENity with EMOTIONAL INJURY Resulting FROM Plaintiff's Denial of DUE Process IN connection with THE Plaintiffs HARSH Sentence 15+5 years in the D.O.C. For A NON violent Traffic Violation that is OVER FOUR TIMES the SENTENCING GUIDELINE ScoreSheet RECCOMENDATION AND NOT compAirable To other Sentences with Similar OFFENSE'S, CAUSING MAJOR DEPRESSION AND ANXIETy, Trouble with Nightmares, CHRONIC PAIN, EMOTIONAL DiSTRESS, AND HYPERTENTION

(d). THREE Million Dollars For SPECIAL DAMAGES IN Accordance To Fla R. Civ. P. Rule 1.120(g) also 1.120(b) Specifically stated Claims for Mental AND PHYSICAL DAMAGE

(e). FIVE Hundred THOUSand Dollar's FOR EACH OF the Four claims = PUNITIVE DAMAGE

(f). ACTUAL; EQUitable Damage's = BREACH of CONTRACT = FRAUD.

(g). GRANT Such other Relief As it may APPEAR that the Plaintiff is ENTitled.

34

## CONCLUSION:

### 1.

### "NOTA BENE"

THIS IS A Civil PROCEEDING AND NOT A GUILT AND INNOCENCE CLAIM, THE DEFENDING ATTORNEY, MR. HOLLOMAN, IS REQUESTED by MR. SUTTON, To GIVE AN ACCOUNT FOR EACH AND EVERY STATEMENT HE MADE AS SHOWN ARE NOT LIES AND TRICKERY AGAINST MR. SUTTON

### OR SHOW

HOW EACH STATEMENT DEFENDED MR. Sutton ACCORDING To the LAWS of this LAND. (DUE PROCESS)

### "QUOD SEMPER, QUOD UBIQUE, QUOD AB OMNIBUS"

### 2.

MR. Holloman's "EGREGIOUS MisConduct" as shown IN the 4 Claims SUPRA when looked at Collectively of His UNCONSCIONABLE PLAN OR Scheme To influence the Court and Jury's Decision Against MR. Sutton constituted FRAUD on Both the Court and MR. Sutton. SEE 844 Fed. APPx. 99:: Debose v. USF Bd. of Trs. 1-21-21 (COA 5th 11th cir).

### 3.

THE Claims SUPRA THAT WOULD HAVE Been Avoided by Any Competent Defense Attorney who Exercises A Reasonable Standard of CARE: MR Holloman's Lack of Communication And CONCEALMENT of His True Intentions with MR. Sutton ARE A Direct Violation of Defense Attorney's Sworn To code of ETHics and Professional Conduct IN which A lawyer Representing a Client "Should zealously Assert the Clients Position under The Rules of the Adversary System." whereas MR Holloman did the Exact Opposite - HE Advocated on Behalf of the STATE, Not MR. Sutton; By the Florida BAR PREAMBLE To ARTicle 4 AND Rules with Constitutional Rights - Expected To know AND ABIDE By which MR Holloman Failed;

### 4.

MR. Holloman's Actions contributed to the Actual Damages AND The Equitable Damages that Resulted From the SUBSTANTIAL UNREASONABLE D.O.C. Sentence of 20 YEARS; 15+5 AND the Guilty verdict withholding

35

Available Evidence,

5. Mr Holloman's Presentation of His own undocumented Conclusions which were "Allegedly used For Improper Purposes" showing His version VS. what Actually HAPPENED in the "Totality of the Circumstances" Supporting the Breach of Contract-FRAUD.

6. THAT Violates FUNDAMENTAL Notions of FAIRNESS which "SHocks the CONSCIENCE", see Rochin v. Calif. 342 U.S 165 (1952).

7. I Respectfully Remind the court that Mr. Sutton is A Pro Se Litigant untrained in Law and REMIND the Court of its Ability To TREAT Any Claim As filed BY ANY Motion Title Available To GRANT said Relief WARRANTED.

RESPECTFULLY SUBMITTED,

/s/ Dorsey W. Sutton #L01135

DORSEY W. Sutton #L01135
Columbia C.I. ANNEX
216 S.E. Corrections Way
Lake City, Florida 32025-2013

Oath and Certificate of Service
Under the Penalities of PerJury, Pursuant To §92.525, Florida Statutes, I Certify that the foregoing Motion is TRUE AND CORRECT AND HAS Been furnished by U.S. MAIL To The Clerk of the Court, United States District Court-Middle Division, 207 N.W. Second Street, Room 337, Ocala Fl. 34475-6666 on this 23rd Day of JANURARY 2023.

RESPECTFULLY Submitted,
/s/ Dorsey W. Sutton #L01135

36

# EXHIBIT A

# EXHAUSTION OF MY

# ADMINISTRATE REMEDIES

BY TRIAL AND Sentencing Judge BRIAN D. LAMbert:

(a) L.T. CASE No: 2012-CF-3751-A MotioN- DENIAL

(b) NEW CASE No: 5DCA #22-0001 ON 1-3-2022

(c) "Notice of DeLAY" SAME JudgE - LAMbert

(d) "PER CURIAM AFFIRMED CASE No: 5D22-0001

(e) MAN DATE; Judge LAMbert oN July 14, 2022

(f) Letter from DefendaNT- CHARLes R. HolloMAN

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

# INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: _____

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☑ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | | | | | |

## REQUEST

Check here if this is an informal grievance ☐

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview.  All informal grievances will be responded to in writing.

Inmate (Signature): _____    DC#: _____

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED: _____

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Print Name): _____    Official (Signature): _____    Date: _____

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

STATE OF FLORIDA,                    CASE NO.:   2012-CF-3751-A

vs.

DORSEY SUTTON,

Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO CORRECT
## SCORESHEET CALCULATION

THIS CAUSE came before the court on the Defendant's Motion to Correct Illegal
Scoresheet Calculation, filed November 8, 2021. The court, having reviewed the motion
and the court file in this action, it is therefore ORDERED the Defendant's Motion to
Correct Scoresheet Calculation is DENIED.

Dated this 17th day of November, 2021.


STEVEN G. ROGERS
Circuit Judge

Cc:    Office of the State Attorney, vie e-service

Sutton W. Dorsey, DC#L01135
Columbia C.I.
216 SE Corrections Way
Lake City, FL 32025

(2)



District Court of Appeal
Fifth District
300 South Beach Street
Daytona Beach, Florida 32114
(386) 947-1500

## ACKNOWLEDGMENT OF NEW CASE

DATE:        January 03, 2022

STYLE:    DORSEY W. SUTTON        v. STATE OF FLORIDA

5DCA#:    22-0001

The Fifth District Court of Appeal has received an Appeal reflecting a filing date of December 30, 2021.

The county of origin is Marion.

The lower tribunal case number provided is 2012-CF-003751.

The filing fee is No Fee-3.800*

Case Type:  Criminal    3.800    Final    Summary

*Filing fees may be paid via the Statewide Portal (myflcourtaccess.com). On the "Pleading on Existing Case" screen, enter your appellate court case number and click "Search." When the case populates, click "Next."  On the next screen, choose "Add." On the next screen (the "Add/Edit Document" screen), search for "pay fee," then choose the appropriate fee box. Upload a copy of the Order to Pay issued by this Court, click "save" and then "next." You do not need to serve the other party with this filing; click "next." On the next screen, choose the appropriate payment option and enter the required credit card or banking information. If the payment information is correct, you may choose "Confirm and Submit All Now."

The Fifth District Court of Appeal's case number must be utilized on all pleadings and correspondence filed in this cause.    Moreover, ALL PLEADINGS SIGNED BY AN ATTORNEY MUST INCLUDE THE ATTORNEY'S FLORIDA BAR NUMBER.

(b)

Pursuant to Administrative Order 5D18-02 (Amended), attorneys are required to: (1) provide their client(s) with a copy of every motion for extension of time or notice of agreed extension of time the attorney files and (2) include a statement in the certificate of service on that motion or notice certifying that a copy of the motion or notice was provided to the client and the manner in which the copy was provided (i.e. by U.S. Mail, e-mail, or hand delivery). The State of Florida and governmental agencies are excluded from the requirements of this Administrative Order.

Any party who may properly proceed in this Court pro se, i.e., unrepresented by counsel, may find useful "The Pro Se [Self-Represented] Appellate Handbook," which is provided by the Appellate Practice Section of The Florida Bar (available at www.flabarappellate.org.).

Please review and comply with any handouts enclosed with this acknowledgment.

cc:    Office of the Attorney    Dorsey W. Sutton    Clerk Marion
       General

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

DORSEY SUTTON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

CASE NO.  5D18-2532
LT CASE NO: 2012-CF-003751-A-Y

LEGAL MAIL PROVIDED TO
COLUMBIA CORRECTIONAL INSTITUTION
ON _____ (DATE) FOR MAILING
_____ Staff Initial _____ I/M Initial

DATE:     May 16, 2022

**BY ORDER OF THE COURT:**

**NOTICE OF DELAY**

Article I, section 16(b)(10)b. of the Florida Constitution provides that all state-level appeals and collateral attacks on any judgment must be complete within two years of the date of appeal in non-capital cases and five years from the date of appeal in capital cases unless a court enters an order with specific findings as to why the court was unable to comply and the circumstances causing the delay. Pursuant to the administrative procedures and definitions set forth in Supreme Court of Florida Administrative Order No. AOSC19-76, this case was not completed within the time frame required by Article I, section 16(b)(10)b. because the applicable time frame had already expired by the time this case was filed in this Court. The parties to this case are advised that no further action is

(C)

necessary.   This case is completed and no further filings will be entertained.

*I hereby certify that the foregoing is*
*(a true copy of) the original Court order.*

Sandra B. Williams

SANDRA B. WILLIAMS, CLERK

Authorized by: Brian D. Lambert, Chief Judge

cc:

Douglas T. Squire          Office of the Attorney          Dorsey W. Sutton
                           General

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DORSEY W. SUTTON,

      Appellant,

v.

      Case No. 5D22-0001
      LT Case No. 2012-CF-003751

STATE OF FLORIDA,

      Appellee.

_____/

Decision filed June 21, 2022

3.800 Appeal from the Circuit Court
for Marion County,
Steven G. Rogers, Judge.

Dorsey W. Sutton, Lake City, pro se.

No Appearance for Appellee.

PER CURIAM.

      AFFIRMED.

EISNAUGLE, TRAVER and NARDELLA, JJ., concur.

Picked up @
LEGAL MAIL ~~PROVIDED TO~~
COLUMBIA CORRECTIONAL INSTITUTION
ON 6-27-22(DATE) FOR MAILING
BA Staff Initial _____ I/M Initial

(d)

# M A N D A T E

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

## FIFTH DISTRICT

THIS CAUSE HAVING BEEN BROUGHT TO THIS COURT BY APPEAL OR BY PETITION, AND AFTER DUE CONSIDERATION THE COURT HAVING ISSUED ITS OPINION OR DECISION;

YOU ARE HEREBY COMMANDED THAT FURTHER PROCEEDINGS AS MAY BE REQUIRED BE HAD IN SAID CAUSE IN ACCORDANCE WITH THE RULING OF THIS COURT AND WITH THE RULES OF PROCEDURE AND LAWS OF THE STATE OF FLORIDA.

WITNESS THE HONORABLE BRIAN D. LAMBERT, CHIEF JUDGE OF THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA, FIFTH DISTRICT, AND THE SEAL OF THE SAID COURT AT DAYTONA BEACH, FLORIDA ON THIS DAY.

DATE: July 14, 2022
FIFTH DCA CASE NO.: 5D 22-0001
CASE STYLE:   DORSEY W. SUTTON  v.   STATE OF FLORIDA
COUNTY OF ORIGIN: Marion
TRIAL COURT CASE NO.:  2012-CF-003751

I hereby certify that the foregoing is
(a true copy of) the original Court mandate.

*Sandra B. Williams*

SANDRA B. WILLIAMS, CLERK

Mandate and Opinion to: Clerk Marion
cc:  (without attached opinion)

Office of the Attorney       Dorsey W. Sutton
General

(e)

*Charles R. Holloman, P.A.*

*Attorney and Counselor at Law*

7 East Silver Springs Boulevard
Suite 200
Ocala, FL. 34470

*I WANT A Copy of*
*CASE# 12-CF-3751*
*MARION County THAT*
*WAS TURNED OVER to*
*YOU AT No CosT, From*
*Ms Concannon who you*
ALSO ADMITTED IN NORTH CAROLINA
*REPLACED.*

TELEPHONE (352) 867-0766
FAX (352) 620-0678
Email: maddogfirm@aol.com

December 8, 2014

Dorsey W. Sutton, DC#L01135
Reception & Medical Center
PO Box Box 628
Lake Butler, Florida 32054

Re: Your Alleged Second Request for Copy of Records

Dear Mr. Sutton:

I have been in communication with the Florida Bar in reference to your request that I copy my entire file, transcripts, and other material to be provided to you apparently all at my own expense. Based upon research provided to me by the Florida Bar, as well as my own, I will only comply with your request upon payment of the costs of reproduction; otherwise, short of being directed to do so by the Florida Bar or a court of competent jurisdiction, there will be no copies at the expense of this firm.

The Florida Supreme Court in *Long v. Dillinger*, 701 So.2d 1168 (Fla.1997), has ruled that the file of an attorney is his personal property as an attorney. This was in agreement with our own Fifth District Court of Appeals in the case of *Dowda and Fields, P.A. v. Cobb*, 452 So.2d 1140 (Fla. 5th DCA 1984).

The Court in *Cobb* fund that "while the attorney may have an ethical duty to communicate information to successor counsel, only the actual property of the client must be returned." *Long* also recognized the holding in *Thompson v. Unterberger*, 577 So.2d 684 (Fla. 2nd DCA 1991) providing that transcripts and other record documents that have been prepared or obtained at public cost for an indigent defendant should be surrendered without charge, other than the cost of postage, which must be borne by the party seeking the records. The case of *Woodson v. Durocher*, 588 So.2d 644 (Fla 5th DCA 1991) held that the public defender was not even obligated to provide free copies of materials other than those prepared at public expense, even though client was entitled to obtain them by paying the required fees.

I hold no property of yours. Accordingly, there is no property to be provided to you, absent you paying the costs of same. The file consists of 243 pages @ $1.00 per page totaling $243.00. Of course, this does not include depositions, if any, that can be purchased from the court reporter.

(f)

I govern myself in accordance with the rules established by the Florida Bar. If I were to provide these documents free of charge it would open the flood gates to hundreds of former clients as well as a liability into the thousands of dollars.

Should you have any questions of me, I stand ready to address your concerns.

Sincerely,

Charles R. Holloman, Esquire

cc: Anne-Marie Martinez, Bar Counsel
Attorney Consumer Assistance Program
The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300